**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LONDON DIVISION**

IN RE

GREGORY AND ANGELA COUCH                                    CASE NO. 14-61443

CLAIMORS

PANTHER PETROLEUM, LLC and                                     PLAINTIFFS
COOLANTS PLUS, INC.
                                                          ADV. NO. 15-6021
V.

GREGORY COUCH                                                   DEFENDANT

**MEMORANDUM OPINION**

This matter is before the Court on the Plaintiffs' Motion for Summary Judgment [ECF

No. 15], the Defendant's Response [ECF No. 50], and the Plaintiffs' Reply [ECF No. 51].  The

Plaintiffs move for summary judgment on Count I (11 U.S.C. §§ 523(a)(3)(B)/(a)(2)(A)), Count

II (11 U.S.C. 523(a)(3)(B)/(a)(4)) and Count III (11 U.S.C. §§ 523(a)(3)(B)/(a)(6)) of their

Complaint based on the doctrine of collateral estoppel.  They argue the Defendant is precluded

from re-litigating the dischargeability of a debt owed to them because a state court entered a

default judgment finding that the Defendant engaged in "intentional, willful, and malicious

conduct" and "caused injury to the Plaintiffs" due to "his actual fraud and false pretenses."  For

the reasons set forth below, the Plaintiffs' motion for summary judgment is granted as to the

Count I and Count III, but denied as to the Count II.

I.      **PROCEDURAL HISTORY AND FACTS**

On August 30, 2013, the Plaintiffs, Panther Petroleum, LLC ("Panther") and Coolants

Plus, Inc. ("Coolants") (collectively the "Plaintiffs"), filed a complaint for injunctive relief and

1

damages in the chancery court for Madison County, Tennessee (the "State Court Complaint")

against the Debtor Gregory Couch.  [Lehnert Affidavit, ECF No. 15-1, at Exh. A.]  The Plaintiffs

alleged the following facts in the State Court Complaint:

> Panther and Coolants share common ownership and sell lubricants, motor oils, antifreeze/coolants, refrigerants, chemicals and other related products.  [*Id*. at ¶ 6.]

> In January of 2013, Coolants retained Couch's services as an independent contractor.  Shortly thereafter, Coolants received a threatening letter from Couch's former employer stating that Couch had a non-competition agreement prohibiting him from working for Coolants in southern Kentucky, where Couch lived at the time.

> Couch thus asked Coolants whether he could relocate to Tennessee and run Panther's business operation.  Coolants agreed. Couch's relationship with Coolants was terminated and Panther hired Couch to serve as the President of Panther in March of 2013.  Panther also loaned Couch $7,500.00 to assist him with the transition.   As president of Panther, Couch ran the company's day-to-day operations and supervised and supported its employees. [*Id.* at ¶ 7.]

> During the course of his Panther employment, Couch became intimately aware of Panther's customer lists and the appropriate contact person at each customer.  Among other information, Couch also became intimately aware of Panther's profit margins, products and pricing information, customer purchasing histories, and lists of vendors and suppliers.  None of this information is generally known or readily ascertainable by the public through proper means, and is therefore treated as trade secrets and confidential business information by Panther.  [*Id.* at¶ 8.]

> To protect its customer base and confidential business information, Panther required Couch to sign a Non-Compete Agreement prohibiting him from directly or indirectly competing with Panther or soliciting Panther's customers for himself or any third party during his employment with Panther and for two (2) years after such employment ended.  [*Id.* at ¶ 9.]

> In or around June of 2013, Couch and another Panther employee (the "Tennessee Litigation Defendants") established a company and/or trade name called Oil Wholesellers.  The Tennessee Litigation Defendants also established a website for Oil Wholesellers at or near the same time.  Per its website, Oil Wholesellers engaged in the same business as and directly competed with Panther.  Panther discovered this information in August of

2013 and terminated the Tennessee Litigation Defendants' employment as a result. [*Id.* at ¶ 10.]

Upon further investigation into the Tennessee Litigation Defendants' misconduct, another Panther employee informed the company that the Tennessee Litigation Defendants had been skimming money and profits from Panther. The employee further informed Panther that he had discovered their scheme and they had paid him $2,800 as "hush" money. [*Id*. at ¶ 11.]

The scheme involved the Tennessee Litigation Defendants contacting Panther customers and selling them Panther products under the name of Oil Wholesellers. After making a sale, the Tennessee Litigation Defendants would cause Panther to deliver the product to the customer, but would send the customer an Oil Wholesellers invoice and the customer would remit payment directly to the Tennessee Litigation Defendants. After the customer paid the Oil Wholesellers invoice (either by issuing a check or by wiring the money to the Tennessee Litigation Defendants' bank), the Tennessee Litigation Defendants would pocket most or all of the profits from the sale. The Tennessee Litigation Defendants would then remit the remaining money back to Panther through fake customer accounts they created in Panther's financials. [*Id*. at ¶ 12.]

Following their termination, the Tennessee Litigation Defendants continued to compete with Panther through Oil Wholesellers. The Tennessee Litigation Defendants continued to contact and solicit Panther customers to purchase products from Oil Wholesellers instead of Panther. The Tennessee Litigation Defendants used Panther's confidential information and trade secrets, including its customer lists and customer contact information, to make such solicitations. [*Id.* at ¶ 13.]

Based on these factual allegations, the Plaintiffs' sought damages for fraud, breach of

duty of loyalty, breach of fiduciary duty, conversion, breach of contract, misappropriation of

trade secrets, tortious interference with business relationships, tortious interference with contract,

unjust enrichment and violation of the Tennessee Consumer Protection Act (Tenn. Code Ann.

§ 47-18-109) ("TCPA"). [*Id.*]

Counsel appeared on Couch's behalf on September 26, 2013, and filed an answer to the

State Court Complaint on October 7, 2013.  Couch also filed a Counter-Complaint asserting

counterclaims against the Plaintiffs.  [Lehnert Affidavit, ECF No. 15-1, at Exhs. B & C.]

On September 29, 2014, Couch's state court counsel moved for leave to withdraw

because Couch failed to respond to his counsel's attempts to contact him.  [*Id.* at Exh. D.] The

state court granted the request.  [*Id.* at Exh. E.]

On November 18, 2014, the state court entered an order requiring Couch to submit

responses to the Plaintiffs' discovery within 30 days of its order.  [*Id.* at Exh. F.]   Couch did not

comply.  Couch also did not take any action to pursue his counterclaims.  [*See id.* at Exh G.]

On December 11, 2014, Couch filed a chapter 7 bankruptcy petition.  He did not file a

suggestion of stay in the state court nor did he list or schedule Plaintiffs or their claims against

him in his bankruptcy papers.  [*In re Couch*, Case No. 14-61443, ECF No. 1.]

On February 9, 2015, the state court entered a default judgment in favor of Plaintiffs on

all causes of action alleged in the State Court Complaint, including all counterclaims (the

"Default Judgment").  [ECF No. 15, Lehnert Aff. at Exh. G & H.]

On April 24, 2015, Couch received his discharge and his bankruptcy case was closed.  [*In

re Couch*, Case No. 14-61443, ECF Nos. 19 & 20.]

On June 2, 2015, the state court held an evidentiary hearing on damages.  It heard

testimony of witnesses and considered exhibits introduced into evidence.  On June 15, 2015, the

state court issued the following findings:

> This matter came to be heard on June 2, 2015. before the Honorable James
> F. Butler, Chancellor of the Chancery Court of Madison County, Tennessee,
> upon Order of Default Judgment entered against Defendant Greg Couch on
> February 9, 2015, statements of counsel, and sworn testimony of witnesses
> Darrin Ward and Chris Burns, including  exhibits introduced into evidence,

and the entire record in this cause from which the Court finds that the
Plaintiffs are entitled to a monetary judgment against Defendant  Greg
Couch in the compensatory amount of $156,205.56 for lost profits based
upon the difference of Plaintiffs product purchased by Greg Couch through
"dummy" and/or fake accounts and the sale of those products to third
persons, including existing customers of Plaintiff Panther Petroleum, plus
freight charges incurred by Plaintiffs.  The Court further finds Defendant
Greg Couch engaged in intentional, willful, and malicious conduct and
caused injury to Plaintiff through his actual fraud and false pretenses.   The
Court therefore finds Plaintiffs are entitled to treble compensatory damages
pursuant to the Tennessee Consumer Protection Act (hereinafter "TCPA")
(Tenn. Code Ann.§  47-18-109) and for inducement of breach of contract
(Tenn. Code Ann.  § 47-50-109). The Court specifically  finds  that an
award  of  treble  damages  is proper  pursuant to the TCPA as a result of
Defendant Greg Couch intentionally, willfully, and maliciously causing
injury  and damages  to Plaintiffs.  The Court further finds that pursuant to
the TCPA, an award of attorney's fees is appropriate and the Court awards
attorney's fees of $61,000.00.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that
Plaintiffs sustained compensatory damages in the amount of $156,205.56
and that the award of compensatory damages be trebled equating to
$468,616.68 and that a Judgment in this amount is entered against
Defendant Greg Couch.

IT IS, FURTHER ORDERED, ADJUDGED AND DECREED that the
Plaintiffs are entitled to recover $61,000.00 in attorney's fees pursuant to the
Tennessee Consumer Protection Act and that an additional Judgment in this
amount is also entered against Defendant.

IT IS ORDERED, ADJUDGED AND DECREED that, pursuant to Tenn.
R. Civ. P. 54.02, this is a final judgment as to Plaintiffs' claims against
Defendant because there is no just reason for delay of entry of a final
judgment in favor of Plaintiffs.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the
Plaintiffs shall have and recover against Defendant the total sum of
$529,616.68 and that court costs are taxed to the Defendant, for all of which
let execution issue if necessary.

[*Id*. at Exhibit I.]  Based on these findings, the state court awarded damages of $529,616.68 to

the Plaintiffs (the "Claim").  [*Id.*]  The findings and damages awarded shall be collectively

referred to as the "State Court Judgment" for the purpose of this Opinion.

Following entry of the State Court Judgment, Plaintiffs learned for the first time that Couch filed his bankruptcy petition.  On July 30, 2015, the Plaintiffs filed this adversary proceeding pursuant to § 523(a)(3)(B) and Fed. R. Bankr. P. 4007(b) seeking a determination that the Claim is non-dischargeable pursuant to § 523(a)(2)(A) (Count I), § 523(a)(4) (Count II) and § 523(a)(6) (Count III).  The allegations in the State Court Complaint previously set forth herein are the same as the allegations raised in the nondischargeability Complaint in this action. [*Compare* Lehnert Affidavit, ECF No. 15-1, Exh. A at ¶¶ 6-13 *with In re Couch*, Adv. No. 15-6021, ECF No. 1, at ¶¶ 6-15.]

The Plaintiffs moved for summary judgment on all counts, the parties thoroughly briefed the issues, and the Court held a hearing on December 16, 2015.  The Court took the matter under submission and it is now ripe for determination.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." FED. R. BANKR. P. 7056 (incorporating  FED. R. CIV. P. 56 by reference).  On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585–87, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986); *Provenzano v. LCI Holdings, Inc*., 663 F.3d 806, 811 (6th Cir. 2011). All evidence and the inferences drawn are read in the light most favorable to the party opposing the motion.  *Id.*  The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

6

For the foregoing reasons, the Court finds that there is no genuine issue of material fact

and the Plaintiffs are entitled to summary judgment on Counts I and III based on the doctrine of

collateral estoppel.  Because collateral estoppel does not apply to Count II, the Plaintiffs' motion

for summary judgment on Count II is denied.

### III.    DISCUSSION

**A.      Plaintiffs Are Entitled to Summary Judgment under § 523(a)(3)(B) if the Claim Is Non-Dischargeable Pursuant to § 523(a)(2), § 523(a)(4), or § 523(a)(6).**

The Plaintiffs were not listed as creditors in Couch's chapter 7 bankruptcy and Couch did

not schedule the Claim.  Further, Plaintiffs did not file a timely proof of claim.  Thus the

Plaintiffs seek a ruling that the Claim is not dischargeable under § 523(a)(3).  *See Kowalski v.*

*Romano (In re Romano)*, 59 Fed. App'x. 709, 713 (6th Cir. 2003).

Section 523(a)(3)(B) states a debt is non-dischargeable if the debt is:

> neither listed nor scheduled under section 521(a)(1) of this title, with the
> name, if known to the debtor of the creditor to whom such debt is owed, in
> time to permit –
>
> …
>
> (B)  if such debt is of a kind specified in paragraph (2), (4), or (6) of this
> subsection, timely filing of a proof of claim and timely request for a
> determination of dischargeability of such debt under one of such
> paragraphs, unless such creditor had notice or actual knowledge of the case
> in time for such timely filing and request.

11 U.S.C. § 523(a)(3).

Couch admits he did not provide notice or otherwise inform Plaintiffs or the state court

about his bankruptcy.  [*In re Couch*, Adv. No. 15-6021, ECF No. 1 at ¶ 26; ECF No. 8 at ¶ 2.]

He does not argue the Plaintiffs had notice or knowledge of his bankruptcy case to allow timely

filing of a proof of claim or a non-dischargeability complaint.  Therefore, the remaining issue is

whether the Claim satisfies the discharge exceptions in § 523(a)(2), § 523(a)(4), and/or

§ 523(a)(6).

> **B.**     **The Claim is Non-Dischargeable Pursuant to § 523(a)(2)(A) and § 523(a)(6).**

The Plaintiffs argue that the Claim is non-dischargeable pursuant to § 523(a)(2)(A),

§ 523(a)(4) and § 523(a)(6) because these issues were decided in the Tennessee state court.  If

this is correct, Couch is barred by the doctrine of collateral estoppel from re-litigating the issues

of: (1) fraud; (2) fraud or defalcation while acting in a fiduciary capacity, embezzlement or

larceny; and (3) willful and malicious injury.  Federal courts apply collateral estoppel if state law

would give collateral estoppel effect to the prior judgment.  *Bay Area Factors v. Calvert (In re*

*Calvert)*, 105 F.3d 315, 317 (6th Cir.1997); *Ed Schory & Sons, Inc. v. Francis (In re Francis)*,

226 B.R. 385, 388 (B.A.P. 6th Cir. 1998).

This Court performed an extensive review of the application of collateral estoppel

involving a default judgment in a Tennessee state court proceeding in *Fisher v. Anderson (In re*

*Anderson)*, Adv No. 13-6021, 2014 WL 98691 at *4 (Bankr. E.D. Ky. Jan. 10, 2014), *aff'd,* 520

B.R. 89 (B.A.P. 6th Cir. 2014).  An extensive review of the *Anderson* decision is not required,

but a summary of the results will assist the analysis.

A prior action that decided issues of fact or law is entitled to full faith and credit in a

subsequent action.  The analysis in *Anderson* determined that a state court judgment will have

collateral estoppel effect in federal court "if a Tennessee state court would recognize the

preclusive effect of the judgment."  *Id.* at *4.  Tennessee courts recognize collateral estoppel as

a bar to re-litigation if "'an issue … was raised in an earlier case between the same parties,

actually litigated, and necessary to the judgment of the earlier case.'"  *Id.* (citing *Rally Hill*

*Prods. v. Bursack (In re Bursack)*, 65 F.3d 51, 54 (6th Cir. 1995) (*citing Massengill v. Scott,* 738

8

S.W.2d 629, 632 (Tenn. 1987)).” Tennessee courts apply the same analysis if the state court

judgment is based on default (*i.e.,* a default judgment may be actually litigated). *Id.* at *6-8.

There is no question or dispute the state court action involved the same parties, so the

remaining analysis will determine whether the issues were actually litigated in the state court and

necessary to the State Court Judgment.

1.      **The Same Issues Raised by § 523(a)(2)(A) and § 523(a)(6) Were
Actually Litigated; the Issues Raised by § 523(a)(4) Were Not.**

(a)      **Fraud was Actually Litigated and the Facts Support a Finding
of Fraud under § 523(a)(2)(A).**

After entry of the Default Judgment, the state court held a hearing and considered witness

testimony, other evidence and the arguments of counsel.  The state court then made a specific

finding that Couch “engaged… in actual fraud and false pretenses.”  [Lehnert Affidavit, ECF No.

15-1 at Exh. I.]  The elements necessary to prove fraud under Tennessee law are virtually

identical to the elements necessary to prove a debt is non-dischargeable for fraud under

§ 523(a)(2)(A). *Anderson*, 2014 WL 98691 at *5 (*citing Rally Hill Prods. v. Bursack (In re*

*Bursack)*, 163 B.R. 302, 305 (Bankr. M.D. Tenn. 1994)).  Thus, a finding of fraud by the state

court precludes Couch from re-litigating the same issue in a § 523(a)(2)(A) action.

In addition, a default judgment is considered an admission of all the properly pleaded

material allegations of fact in a complaint, except the amount of unliquidated damages. *H.G.*

*Hill Realty Co., LLC v. Re/Max Carriage House, Inc*., 428 S.W.3d 23, 30 (Tenn. Ct. App. 2013).

The state court would have treated the factual allegations in the State Court Complaint as true in

reaching its conclusion that Couch committed fraud.  The Plaintiffs allege the same facts in this

proceeding as the facts relied on by the state court for the State Court Judgment.  [*Compare*

Lehnert Affidavit ECF No. 15-1, Exh. A at ¶¶ 11-12 *with In re Couch*, Adv. No. 15-6021, ECF

No. 1 at ¶¶ 13-14.]  The facts show Couch and another Panther employee established a company

to sell Panther products, hid their scheme from Panther through fake customer accounts, and

pocketed the profits.  Couch's scheme to steal profits from Panther proves fraud by a

preponderance of the evidence in the context of § 523(a)(2)(A).

> **(b)      Willful and Malicious Injury was Actually Litigated and the Facts Support a Finding of Willful and Malicious Injury under § 523(a)(6).**

The state court also made a specific finding that Couch engaged in "intentional, willful,

and malicious conduct …" and was "intentionally, willfully and maliciously causing injury and

damages to Plaintiffs."  [Lehnert Affidavit, ECF No. 15-1 at Exh. I.]  This is the same conduct

relied on by the state court in finding Couch committed fraud and the intentional, willful and

malicious nature of the conduct is the basis of the state court's award of treble damages under the

TCPA.  [*Id.*]

To prove willfulness under § 523(a)(6), a creditor must show by a preponderance of the

evidence that (1) the debtor intended his actions;  and (2) the debtor either intended his actions to

cause injury to the creditor or the debtor believed that injury to the creditor was substantially

certain to follow.  *Tomlin v. Crownover (In re Crownover)*, 417 B.R. 45, 55 (Bankr. E.D. Tenn.

2009) (*citing Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464-465 (6th Cir. 1999))).

If a creditor proves willfulness, then malice is necessarily implied because the "intent to cause

injury to another person's property is malicious unless the debtor had a just cause or excuse for

acting with the intent to cause injury."  *Id.* at 55.

Two courts have recently discussed the application of collateral estoppel to a prior

judgment under the TCPA in the § 523(a)(6) context.  In *Crownover*, the state court awarded

treble damages based on a finding that the debtor's unfair or deceptive act or practice, *i.e.,*

misleading the plaintiffs about skills and abilities and "front-loading" construction drawings, was

a "willful and knowing violation."   417 B.R. at 53-54.  The *Crownover* court recognized that

"willful" under the TCPA means intentional, which satisfied the requirement under § 523(a)(6)

that a debtor intend to cause the harm.  *Id.* at 58.  But the *Crownover* court ultimately concluded

collateral estoppel did not apply because the state court judgment did not find that the debtor

intended to cause the resulting harm when he misled the plaintiffs.  *Id.* at 58.  Similarly, another

bankruptcy court in Tennessee held that collateral estoppel did not apply in the § 523(a)(6)

context because the prior court's award of treble damages under the TCPA did not require a

finding of malice and the prior judgment did not make a specific finding of malice.

*MarketGraphics Research Group, Inc. v. Berge (In re Berge)* Adv No. 313-90400, 2014 WL

4929423 *3 (Bankr. M.D. Tenn. Sept. 30, 2014).

    This case is different from *Crownover* and *Berge*.  The state court specifically held that

Couch engaged in "intentional, willful, and malicious conduct…" and such intentional, willful

and malicious conduct "caused injury and damages to the Plaintiff."  [Lehnert Affidavit, ECF

No. 15-1 at Exh. I.]  The factual allegations that describe Couch's scheme to skim money and

fraudulently retain Panther's profits are sufficient to conclude Couch's fraudulent conduct is

intentional.  An employee who skims money and profits from an employer knows that he will

cause his employer to suffer lost profits; it defies logic to argue otherwise.  The elements of

willful and malicious injury as required by § 523(a)(6) were actually litigated in the prior state

court proceeding and support a determination that the debt is a result of a willful and malicious

injury.

### (c)      Fraud or Defalcation by a Fiduciary, Embezzlement or Larceny Were Not Actually Litigated.

There are insufficient findings by the state court to address the elements necessary to

prove a debt is non-dischargeable under § 523(a)(4).  The Plaintiffs sought damages for breach

of fiduciary duty and conversion in the state court, which are counts often associated with a

§ 523(a)(4) action.  The state court issued a finding that the Plaintiffs are entitled to damages for

lost profits "based upon the difference of Plaintiffs product purchased by Greg Couch through

'dummy' and/or fake accounts and the sale of those products to third persons."  [Lehnert

Affidavit, ECF No. 15-1, at Exh. I.]  This finding suggests the intentional tort of conversion, but

the state court did not find that Couch was a fiduciary or that his activities rose to the level of

embezzlement or larceny.  Thus, fraud or defalcation by a fiduciary, embezzlement or larceny

were not actually litigated in the state court action and collateral estoppel cannot apply under

§ 523(a)(4).

### 2.      The Issues of Fraud and Willful and Malicious Injury Are Necessary to the State Court Judgment.

Preclusive effect is given only to issues that are necessary to support the prior court's

judgment and not merely "incidental, collateral or nonessential" to the judgment.  *SunTrust Bank

v. Bennett (In re Bennett)*, 517 B.R. 95, 103-104 (Bankr. M.D. Tenn. 2014).  The findings of

fraud and willful and malicious injury are necessary to the State Court Judgment.

The state court's findings of fraud and willful and malicious injury are based on the same

facts alleged in the state court litigation and in this adversary proceeding.  The treble

compensatory damages and attorneys' fees awarded pursuant to the TCPA are dependent on

Couch's "intentional, willful, and malicious conduct." The findings of fraud and willful and

malicious injury are integral to the State Court Judgment and the third element of collateral

estoppel is satisfied.

**C.      Couch's Arguments that Collateral Estoppel Does Not Apply are Not Persuasive.**

Couch's arguments that collateral estoppel does not apply are unavailing.  Couch argues

there are two additional factors not considered in *Anderson*: (1) whether the issues subject to

collateral estoppel were decided on the merits; and (2) whether Couch had a full and fair

opportunity in the earlier proceeding to contest the issues.  [Defendant's Response, ECF No. 50

at 4-5.]  Couch argues that a default judgment is not a judgment on the merits.  He also contends

he did not have a full and fair opportunity to litigate the issues because he did not monitor papers

received at his address for service in the state court and had communication problems with his

state court counsel.

**1.      The Additional Factors Raised by Couch Are Already Part of the Collateral Estoppel Analysis.**

The two factors cited by Couch are not new; they are considered as part of the factors

reviewed in this Opinion.  Judgments based on default in Tennessee are given collateral estoppel

effect if they satisfy the "actually litigated" requirement addressed in Section III.B.1, *supra*.

*Anderson*, 2014 WL 98691 at *6-8 (an extensive analysis of this issue); *see also Roberts v.*

*Vaughn*, Case No. W2008-01126-COA-R3-CV, 2009 WL 1608981 *4 (Tenn. Ct. App. June 10,

2009) ("A default judgment is a judgment on the merits for the purposes of *res judicata*.").

Couch's own case law recognizes that a default judgment counts as "actually litigated" in

Tennessee for all well-pleaded allegations that are deemed admitted upon entry of the default.

*Bennett*, 517 B.R. at 101-102 (*citing Rally Hill Prods., Inc. v. Bursack (In re Bursack)*, 65 F.3d

51, 54 (6th Cir. 1995)).

The full and fair opportunity to participate in the issues decided in the prior action is also part of the "actually litigated" analysis. In *Anderson*, the defendants "considerable participation" in the state court action led to a conclusion the issues were actually litigated. 2014 WL 98691 at *8. The defendants hired an attorney, filed an answer and counter-complaint against the state court plaintiffs, and then refused to obey court orders regarding discovery. *Id*.

Couch also actively participated in the state court proceeding. He hired an attorney who appeared on his behalf, answered and filed a counter-complaint, and then failed to obey court orders regarding discovery. Even after entry of the default judgment, the state court held an evidentiary hearing to consider witness testimony and evidence before entering the State Court Judgment. Couch's own legal authority recognizes a defendant who appears *pro se* in a state court proceeding has a full and fair opportunity to litigate despite not appearing for the evidentiary hearing that resulted in a judgment against her. *See Gray v. Vinsant (In re Vinsant)*, 539 B.R. 351, 357 (Bankr. E.D. Tenn. 2015). Couch had every opportunity to participate and his excuses fall flat.

### 2.     The Record Does Not Support Couch's Excuses for Failing to Defend the State Court Lawsuit.

Couch's excuses for failing to defend the allegations in the state court are not supported by the record and do not impact the collateral estoppel determination. The state court record shows that Couch's counsel withdrew because Couch would not respond to multiple attempts to contact him. Couch's arguments that the attorney did not try every address cannot stand because Couch knew litigation was ongoing and should have checked in periodically. Further, Couch is accountable for the acts and omissions of his counsel even if Couch might have reason to blame counsel. *Nafziger v. McDermott Int'l, Inc*., 467 F.3d 514, 524 (6th Cir. 2006).

14

Couch also places blame on the Plaintiffs because they served Couch at his last known address used in the Tennessee state court filings after his counsel withdrew.  Service at a party's last known address is appropriate under Tennessee law.  "Service upon the attorney or upon a party shall be made by delivering to him or her a copy of the document to be served, or by mailing it to such person's last known address, or if no address is known, by leaving the copy with the clerk of the court."  TENN. R. CIV. P. 5.02(1); *see also Reynolds v. Battles*, 108 S.W.3d 249, 251 (Tenn. Ct. App. 2009) ("If a litigant proceeding *pro se* relocates during the course of litigation, he is encumbered with the responsibility of notifying the clerk of the court of his new address.").  Couch cites no law, and nothing was found, that would require the Plaintiffs to expand service as he desires.

**IV.    CONCLUSION**

The Plaintiffs have met their burden to prove Couch is precluded from re-litigating the issues of fraud and willful and malicious injury by the State Court Judgment under the doctrine of collateral estoppel.  Therefore, there are no genuine issues of material fact and the Plaintiffs are entitled to summary judgment on Counts I (§§ 523(a)(3)/523(a)(2)(A)) and III (§§ 523(a)(3)/523(a)(6)) of their Complaint.

The Plaintiffs' Motion for Summary Judgment [ECF No. 15] is therefore granted as to Counts I and III, and denied as to Count II, and the Claim of  $529,616.68 is non-dischargeable.

A separate judgment will be entered in accordance with this Memorandum Opinion.

15

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Thursday, January 07, 2016**
**(grs)**